IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TONYA CARSWELL,                    )
                 Plaintiff,        )
                                   )
        vs.                        )        Civil Action No. 13-378
                                   )
MONUMENTAL LIFE INSURANCE CO.      )
et al.,                            )
                 Defendants.       )

MEMORANDUM OPINION AND ORDER

Plaintiff, Tonya Carswell, brings this pro se action alleging claims of racial

discrimination, sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e to 2000e-17 (Title VII), the Pennsylvania Human Relations Act, 43 P.S.

§§ 951-63 (PHRA), and the Equal Pay Act, 29 U.S.C. § 206 (EPA), against Defendants,

Monumental Life Insurance Co. and its employee, district manager Ronald Ehalt.

Presently pending before the Court is a motion to dismiss, filed by Defendants.  For the

reasons that follow, the motion will be granted in part and denied in part.

Facts

"Plaintiff is a black female citizen of the Commonwealth of Pennsylvania…."  (Compl.

¶ 6.)  She was hired by Monumental Life Insurance Co.[1] (Monumental) in March 2010 as a sales

representative; she was made a career agent in August 2012.  (Compl. ¶ 10.)  She states that, at

the time she was hired, she was the only black female agent in Monumental's sales force in the

Pittsburgh office.  (Compl. ¶ 13.)  She alleges that, although she had consistent success as a sales

representative in developing customer business and selling Monumental's  products and had a

---

[1] Plaintiff refers to the corporate defendant as "Monumental/Transamerica Life Insurance" but it indicates that its proper name is "Monumental Life Insurance Company." (ECF No. 15 at 1 n.1.) It is noted, however, that two of the documents in the record are on the letterhead of "Transamerica Life Insurance Company" and "Transamerica Agency Network," respectively (Compl. Exs. D, F).

proven track record as a qualified sales agent, "Plaintiff learned she was referred to as a 'streetwalker' by Ron Ehalt, Vice President of the Pittsburgh office at that time, in the presence of Vince Crimbly, former District Manager[,] and Rafal Kolankowski, Plaintiff's former Sales Manager." (Compl. ¶ 16.)

In April 2011, Plaintiff was in a motor vehicle accident and suffered a concussion and other injuries to her neck and back. She alleges that Ehalt refused to allow her to return to work in July 2011 without a doctor's release; that she was unable to obtain this release until September; and that she obtained a release indicating that she could return to work in October but Ehalt told her that her clients' policies had lapsed because she was gone so long. (Compl. ¶ 17.) Plaintiff alleges that she spoke with Gary Barnes, Field Human Resources, who told her that she could return to work once she was released full-time; that Barnes told her that the release she obtained in November 2011 for working 4-hour days was not acceptable; that she finally obtained a release to return full-time in January 2012; but that when she returned she "was ostracized and unwelcomed. Her desk was taken and she had no mailbox." (Compl. ¶¶ 18-19.) She also learned that Barbara Olsen-Douglas (who is Caucasian) was hired in August 2011 and given Plaintiff's clients; that she was promised her clients would be returned to her but they were not; and that Olsen-Douglas was receiving service pay for her clients. (Compl. ¶¶ 21-23.)

In February 2012, Plaintiff learned that Ehalt had accused her of having been sexually involved with Vince Crimbly, the previous district manager, by asking the office administrator, Linda Sandusky, "what was Vince thinking when he hired her, was something going on between them two?' (Compl. ¶ 27.) Plaintiff filed a formal complaint regarding Ehalt's comments and other issues to Field Human Resources. (Compl. ¶ 28 & Ex. A.) On March 7, 2012, Senior Human Resources Professional Advisor Gary Barnes sent her a response, in which he wrote that

"we have conducted an investigation into your concerns, and appropriate action has been taken based on the investigation."  (Compl. ¶ 29 & Ex. B.)

Because she concluded that Barnes's response was inappropriate and vague, Plaintiff contacted Neighborhood Legal Services Association (NLSA).  On March 16, 2012, NLSA lawyer Elizabeth Tuccuillo advised her to file a complaint with the Equal Employment Opportunity Commission (EEOC).  (Compl. ¶ 31 & Ex. C.)  She indicates that she filed a charge in March 2012[2] asserting discrimination based on race and sex and that, after Monumental was notified of it in April, she received a letter threatening to terminate her if she did not meet a required quota by August 15, 2012.  (Compl. ¶ 32 & Exs. D, E.)  Plaintiff asserts that this threat was unnecessary (because she was not in jeopardy of not meeting her quota) and inappropriate (because immediate termination is not the response to failing to meet a quota).  She alleges that she also felt she was being harassed when Ehalt tried to "force Plaintiff to go on sales calls with her violator."  (Compl. ¶ 33.)

Plaintiff verbally complained to Michael Knotts, VP of the region, and told him that if the harassment did not stop she would have to resign.  Knotts explained to her that he did not want her to resign because she was a good agent, but that if she was "not able to push pass the negativity, that he would keep her on payroll for a couple weeks so she could look for other employment."  (Compl. ¶ 34.)

Plaintiff alleges that John Mammakos, sales manager, told her that Ehalt demanded that she be placed with a different agency because the one she had consisted of middle class white people and it did not "fit" her.  Plaintiff asserts that more intense harassment began in July when she met her requirement plus, ahead of the deadline.  (Compl. ¶¶ 35-36.)

---

[2] In her brief in opposition to the motion to dismiss, she states that she filed her EEOC charge on March 31, 2012 (ECF No. 22 at 1.)

In August 2012, Plaintiff filed a second charge of discrimination, complaining of retaliation when she met her quota and could not be terminated. She states that the charge "was finalized in October 2012 because Plaintiff had to include her constructive discharge and her unemployment benefits being disputed and denied due to Employers' false statements." (Compl. ¶ 37.)[3] Plaintiff asserts that the conditions made it intolerable for her to continue her employment and thus her resignation was involuntary and amounted to a constructive discharge. (Compl. ¶¶ 38-39 & Ex. F.)[4] She notes that the retaliation charge has not yet been investigated and a determination has not been made. (Compl. ¶ 41.)

On December 17, 2012, Plaintiff received a Dismissal and Notice of Rights form ("Right to Sue letter") from the EEOC regarding her first charge of discrimination, although she contends that the agency did not perform a proper investigation. (Compl. ¶ 42 & Ex. G.) Finally, she indicates that she has attached to her complaint sworn affidavits from Rafal Kolankowski, William Meghan, Linda Sandusky and Vince Crimbly, who have first-hand knowledge and are witnesses to the sexual harassment, sexual discrimination and harassment Plaintiff was subjected to. (Compl. ¶ 43 & Exs. H, I, J, K.)

Procedural History

Plaintiff filed this action on March 15, 2013. Count I alleges sexual harassment and discrimination in violation of Title VII and the PHRA. Count II alleges discrimination with respect to "an individual not in Plaintiff's protected class receiving service pay for Plaintiff[']s clients she wrote policies for as promised" in violation of the EPA (Compl. ¶ 47); and also

---

[3] Plaintiff states that the second charge is attached to the Complaint as Exhibit E; however Exhibit E is the first charge of discrimination. Defendants have attached the second charge as an exhibit to their motion to dismiss (ECF No. 15, Wilhelm Decl. Ex. 1.)

[4] The date of the letter Plaintiff sent to her supervisors announcing her resignation is August 14, 2012 (Compl. Ex. F) and the second charge of discrimination states that she resigned her position on August 15, 2012. (ECF No. 15, Wilhelm Decl. Ex. 1.)

alleges that the "acts, failures to act, practices and policies of Defendant set for above, constitute a constructive discharge of Plaintiff in violation of … Title VII and [the PHRA]." (Compl. ¶ 49.)

On June 3, 2013, Defendants filed a motion to dismiss (ECF No. 14).  Although a briefing order was entered (ECF No. 18) giving Plaintiff until June 25, 2013 to respond, she did not file a response to the motion within the time indicated.  In August 2013, Plaintiff called the Court to state that she had been unaware of the motion to dismiss or the briefing order and thereafter she filed a motion for extension of time to respond (ECF No. 20), which was granted.  Her response to the motion was filed on August 29, 2013 (ECF Nos. 21, 22).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6).  The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient.  Id. at 679.  District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but may

disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

"Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). In addition, "[c]ourts ruling on Rule 12(b)(6) motions may take judicial notice of public records." Anspach ex rel. Anspach v. City of Phila., 503 F.3d 256, 273 n.11 (3d Cir. 2007). Thus, Plaintiff's second EEOC charge, which is referenced in the Complaint and is attached to Defendants' motion to dismiss (and which Plaintiff thought she had attached to the Complaint), may be considered without converting the motion into a motion for summary judgment. See Wormack v. Shinseki, 2010 WL 2650430, at *1 n.1 (W.D. Pa. July 1, 2010) (Fischer, J.)

Defendants contend that: 1) Plaintiff's Title VII claims should be dismissed because she filed two charges of discrimination and the second one is still pending so the more recent claims (which are not within the scope of the first charge) are unexhausted; 2) her PHRA claims are premature because the Pennsylvania Human Relations Commission (PHRC) has not closed the file and she has not waited until one year after filing the second charge; 3) there is no liability for individuals under Title VII and although there is "aiding and abetting" liability under the PHRA, she did not name Ehalt in her charge so the claims against him must be dismissed; and 4) she has not alleged a claim under the EPA because she has not claimed that she was paid less based on

6

her gender and in fact she alleges that another woman received the service pay to which she was entitled (and as with Title VII, there is no liability for individuals).

Plaintiff responds that: 1) she did exhaust her administrative remedies and her second charge of discrimination is fairly within the scope of the prior EEOC charge as it alleges subsequent acts of retaliation; 2) she has exhausted her claims with the PHRC; 3) she concedes that Title VII does not allow for liability of individuals, but the PHRA does and Ehalt is specifically named as the individual doing the unlawful discriminatory acts; and 4) she has stated a claim under the EPA and Ehalt may be held liable for his actions.

Exhaustion of Remedies

Title VII requires plaintiffs to exhaust administrative remedies prior to bringing suit in court by filing an administrative claim with the EEOC.  42 U.S.C. § 2000e-5(e)(1).  The Court of Appeals has held that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of the proceedings before the EEOC."  Mandel v. M & Q Packaging Corp., 706 F.3d 157163 (3d Cir. 2013) (citing Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).

A claim of retaliation in response to filing an EEOC charge is a good example of new acts which occurred during the pendency of the proceedings before the EEOC and can be said to have grown out of the original charge.  Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984).

> Moreover, we have held that the failure to obtain a right-to-sue letter, in particular a second one for a retaliation claim, is curable at any point during the pendency of the action. Gooding v. Warner-Lambert Co., 744 F.2d 354, 357-59 (3d Cir. 1984) (eschewing "highly technical pleading rules, which only serve to trap the unwary practitioner," in favor of notice pleading; reversing dismissal of Title VII action where second right-to-sue letter issued after complaint filed).

7

Anjelino v. New York Times Co., 200 F.3d 73, 96 (3d Cir. 1999) (other citations omitted).

In this case, Plaintiff filed a charge of discrimination and received a Right to Sue letter from the EEOC.  She filed a second charge in which she cited the prior charge by number, checked the box for "retaliation" (as well as for discrimination based on "race" and "sex") and described how she was subjected to "retaliation for filing a previous employment discrimination charge with the [EEOC]."  Under these circumstances, the fact that the EEOC has not yet sent her a right to sue letter regarding the second charge is a technical deficiency that can be cured and does not demonstrate that her claims should be dismissed for failure to exhaust administrative remedies.[5]  This argument is rejected.

On the other hand, under the PHRA, unlike Title VII, "every separate charge must be exhausted, regardless of whether a subsequent charge is fairly within the scope of a previous one."  Traxler v. Mifflin County Sch. Dist., 2008 WL 717852, at *4 (M.D. Pa. Mar. 17, 2008) (citing Snyder v. Pennsylvania Ass'n of Sch. Retirees, 566 A.2d 1235, 1241-42 (Pa. Super. 1989)).  Rather, the PHRC has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter and a complainant may not file an action in court for a period of one year (or sooner, if the PHRC resolves the matter).  Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001) (citing Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 920 (Pa. 1989)).  Plaintiff filed her second charge of discrimination on October 12, 2012, she has not indicated that the PHRC has

---

[5] Defendants argue that Plaintiff's second charge of discrimination does not fall within the EEOC's investigation of the first charge because the agency accepted Monumental's position statement on December 18, 2012, one day after it closed its investigation on the first charge. (ECF No. 15 at 4-5.)  Not only does this argument rely on a document that is not properly before the Court at this time, but it also draws negative inferences (from a neutral sequence of events) against the Plaintiff, the non-moving party.  This would be improper even on a motion for summary judgment, let alone a motion to dismiss.

closed its investigation and one year has not elapsed since that time.  Thus, the allegations arising

out of the second charge are unexhausted and may not be pursued at this time.  Defendants also

argue that she has not indicated that the PHRC has closed the investigation of the first charge,

but that is irrelevant: "Importantly, and unlike under Title VII, notice of the right to sue is not

required in order to bring the PHRA action.  Instead, after one year has elapsed, a complainant

may bring a court action regardless of whether or not he has received a letter from the PHRC."

Burgh, 251 F.3d at 471.  Thus, the PHRA claims based on the second charge of discrimination

will be dismissed, but those based on the first charge will not be.

Liability of Ehalt

The Court of Appeals has held that "Congress did not intend to hold individual

employees liable under Title VII."  Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061,

1078 (3d Cir. 1996) (en banc).  Thus, Ehalt cannot be held liable under Title VII and the Title

VII claims against him will be dismissed.

However, the PHRA states that it is an unlawful employment practice:

> For any person, employer, employment agency, labor organization or
> employe, to aid, abet, incite, compel or coerce the doing of any act declared by
> this section to be an unlawful discriminatory practice, or to obstruct or prevent
> any person from complying with the provisions of this act or any order
> thereunder, or to attempt, directly or indirectly, to commit any act declared by this
> section to be an unlawful discriminatory practice.

43 P.S. § 955(e).  Thus, Ehalt could still be liable under the PHRA for aiding and abetting

discrimination by Monumental.  See Dici v. Commonwealth of Pa., 91 F.3d 542, 553 (3d Cir.

1996).  Defendants argue that the PHRA requires that a complaining party invoke the

administrative procedures established by the Act, 43 P.S. § 962(c), including filing a verified

complaint with the PHRC identifying the "name and address of the person, employer, labor

organization or employment agency alleged to have committed the unlawful discriminatory

practice," 43 P.S. § 959(a).  See McQuaid v. ACTS Retirement Communities Southampton

Estates, 2005 WL 2989642, at *3 (E.D. Pa. Aug. 5, 2005) (dismissing claims against individual

defendants who were not named as respondents in the original charge of discrimination).

Defendants note that Ehalt was not named in the caption of the charge.

A PHRA action ordinarily may be brought only against a party named in a PHRC charge.

43 P.S. § 959(a).[6]  However, Defendants cite no authority to support their position that the party

must be named on a specific portion of the form.  To the contrary:

> Courts have not interpreted the PHRA in this way. A plaintiff's claims are
> preserved as long as she names the defendants in the body of the EEOC
> administrative complaint because it provides the defendants with the requisite
> notice that their conduct is under formal review. It is not necessary that the
> defendants be named in the caption as a respondent. See, e.g., Diep v. Southwark
> Metal Mfg. Co., No. Civ. A. 00–6136, 2001 WL 283146, at *3 (E.D. Pa. Mar. 19,
> 2001) (concluding administrative remedies were exhausted when defendants were
> named in body of EEOC complaint); Glickstein v. Neshaminy Sch. Dist., No. Civ.
> A. 96–6236, 1999 WL 58578, at *6 (E.D. Pa. Jan. 26, 1999) (same).

McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 398-99 (E.D. Pa. 2002).

See also Gokay v. Pennridge Sch. Dist., 2003 WL 21250656, at *4 (E.D. Pa. Feb. 28, 2003).

Ehalt was named in the body of the charge and his acts were explicitly described.  Thus, he

received every indication that his conduct was being formally reviewed.[7]  Therefore, this

argument is unavailing.

EPA Claim

To state a claim under the EPA, a plaintiff must allege "that an employer pays different

---

[6]Although the PHRA does not impose Title VII's requirement that a civil action be brought only "against the respondent named in the complaint," 42 U.S.C. § 2000e-5(f)(1), courts have interpreted the PHRA consistently with this procedural requirement of Title VII.  See Glickstein v. Neshaminy School Dist., 1997 WL 660636, at *10 (E.D. Pa. Oct. 22, 1997).

[7] Plaintiff has also attached to her response a copy of Monumental's position statement with respect to the first charge of discrimination in order to demonstrate that it submitted a response on Ehalt's behalf (ECF No. 22 Ex. 1 at 3).

10

wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)).

Plaintiff contends that she has stated a prima facie case under the EPA, but her complaint alleges that it was Barbara Olsen-Douglas who was hired while she was on medical leave, who was given her accounts and who "has been receiving service pay for Plaintiffs' [sic] accounts." (Compl. ¶ 23.)  She makes no reference to a man receiving more pay than she did for equal work. Thus, her own allegations are that a woman (whether she was Caucasian or not is irrelevant as the EPA does not apply to racial discrimination) was paid more than she was.  This is insufficient.  See Delprato v. Day Chevrolet, Inc., 427 Fed. App'x 86, 89 (3d Cir. 2011) (affirming this Court's dismissal of a pro se plaintiff's bald invocation of the EPA without a statement that he was paid less based on his sex); Nardella v. Philadelphia Gas Works, 2010 WL 2736946, at *6 (E.D. Pa. July 12, 2010) ("Plaintiff also fails to allege that she was paid less than employees of the opposite sex, which is required to establish a cause of action under the EPA.") She has failed to state a claim under the EPA and these claims will be dismissed.

In conclusion, the motion to dismiss filed by Defendants will be granted with respect to the Equal Pay Act in Count II, the Title VII claim in Count I against Ronald Ehalt and any PHRA claims arising out of the second charge of discrimination, and denied in all other respects. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TONYA CARSWELL,                          )
        Plaintiff,                       )
                                         )
        vs.                              )          Civil Action No. 13-378
                                         )
MONUMENTAL LIFE INSURANCE CO.            )
et al.,                                  )
        Defendants.                      )

ORDER

AND NOW, this 11th day of September, 2013, for the reasons indicated above,

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants (ECF No. 14) is granted with respect to the claim under the Equal Pay Act in Count II, the Title VII claim in Count I against Ronald Ehalt and any PHRA claims arising out of the second charge of discrimination, and denied in all other respects.

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge